HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MINHNGA NGUYEN,

        Plaintiff,

    v.

THE BOEING COMPANY,

        Defendant.

CASE NO. C15-793RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the Court on Defendant Boeing Company's ("Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint.  Dkt. # 31. For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion.  Dkt. # 31.  Plaintiff has also filed a pleading entitled "Motion to Grant Plaintiff Relief."  Dkt. # 37.  The Court **STRIKES** this pleading to the extent that it and its corresponding reply are improper surreplies and **DENIES** Plaintiff's apparent request for an expedited trial or discovery schedule.  Dkt. # 37 & 40.

## II.  BACKGROUND

Plaintiff Minhnga Nguyen ("Plaintiff") has repeated substantially similar allegations throughout this case.  Briefly, Defendant hired Plaintiff in 1991 and terminated her position as a systems engineer in November 2014.  *See* Dkt. # 29 ("Am. Compl.") at 2.  As a result, Plaintiff brings a host of employment discrimination claims.

ORDER – 1

*Id.* at 9-11.  To support her claims, Plaintiff recites several instances of behavior that she perceived to be discriminatory.

In March 2014, Plaintiff received a Corrective Action Memorandum ("CAM") for failure to follow management direction, a year after she had been rated by her manager Dorothy Todd at "lowest retention 3" and Plaintiff had subsequently emailed other managers about her perceived unequal treatment.  *See id.* at 2.

In April 2014, Ms. Todd was transferred and Plaintiff was assigned to Gary Weber.  *Id.* at 3.  Defendant promoted Keith Sellers to be Plaintiff's senior manager.  *Id.* A month later, Mr. Weber told Plaintiff during a performance review that he could "easily get a drafter to replace [Plaintiff]."  *Id.*

In July 18, 2014, Plaintiff's eyeglasses were stolen at work and she felt sick.  *Id.* She emailed her acting supervisor that she needed to take time off because she felt stressed.  *Id.*  On July 21, 2014, Mr. Sellers called Plaintiff at her home.  *Id.*  Plaintiff did not return his calls and she was subsequently accused of not respecting Mr. Sellers.  *Id.* Her laptop was also confiscated and she was no longer permitted to work off-site like other members of her group.  *Id.*  Plaintiff was also assessed a five day suspension for failing to accurately record her time.  *See id.* at 15.

Plaintiff was again disciplined – this time with a written warning – for failing to park in a designated parking space on October 15, 2014.  *See id.* at 4, 16.  Plaintiff was given a five day suspension for again failing to park in a designated parking space on November 20, 2014.  *Id.* at 19.  She was discharged the next day for failing to follow management direction.  *See id.* at 20.

Plaintiff subsequently filed a charge of discrimination with the EEOC in February 2015.  *See id.* at 29.  The EEOC ultimately was unable to conclude that any statutory violations had occurred and issued Plaintiff a right to sue letter as a result dated August 31, 2015.  *See id.* at 28.

ORDER – 2

### III.   LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim.  The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief.  *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may also consider evidence subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Where a plaintiff proceeds *pro se*, the court must construe his "complaints liberally even when evaluating it under the *Iqbal* standard."  *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011) (citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).  "Furthermore, '[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs.'"  *Id.* (quoting *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004)).

ORDER – 3

# IV. ANALYSIS

a. <u>Disparate Treatment Claims</u>

The Court begins with Plaintiff's apparent disparate treatment based claims pursuant to Title VII, WLAD, and § 1981. Plaintiff contends that she was discriminated against on the basis of her sex, race, age, and national origin. *See* Am. Compl. at 2.

Because Washington's discrimination laws substantially parallel federal laws, it is often appropriate to analyze state and federal discrimination claims together. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2001) (citing *Payne v. Children's Home Soc. of Wash.*, 892 P.2d 1102, 1105 (Wash. 1995)); *Alonso v. Quest Commc'ns Co., LLC*, 315 P.3d 610, 616 n.11 (Wash. Ct. App. 2013) (citing *Xieng v. Peoples Nat'l Bank of Wash.*, 844 P.2d 389, 392 (Wash. 1993)); *Knight v. Brown*, 797 F. Supp. 2d 1107, 1133 (W.D. Wash. 2011) (applying same analysis to claims under Title VII, § 1981, and WLAD).

Generally speaking, "[a] plaintiff may establish a prima facie case of disparate treatment by showing (1) that he is a member of a protected class; (2) that he was qualified for his position and performing his job satisfactorily; (3) that he experienced an adverse employment action; and (4) that 'similarly situated individuals outside [his] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Knight*, 797 F. Supp. 2d at 1125 (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)); *see also Matson v. United Parcel Serv., Inc.*, 872 F. Supp. 2d 1131, 1137 (W.D. Wash. 2012) (citing *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002); *Davis v. W. One Auto Grp.*, 166 P.3d 807, 812 (Wash. Ct. App. 2007)).[1]

---

[1] Alternatively, Plaintiff could rely on direct or circumstantial evidence of discriminatory intent. *See Hedenburg v. Aramark Am. Food Servs., Inc.*, 476 F. Supp. 2d 1199, 1205-06 (W.D. Wash. 2007) (quoting *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004)). Plaintiff does not allege any facts showing discriminatory intent.

1    Defendant contends[2] that Plaintiff's disparate treatment claims should be

2    dismissed because she has not sufficiently alleged that she was competently performing

3    her job or that any other employees outside her protected class were treated more

4    favorably. *See* Dkt. # 31 at 7-8. Plaintiff does not directly address any of these

5    arguments, instead largely repeating the same factual allegations that she has previously

6    presented to the Court. *See* Dkt. # 35.

7    Contrary to Defendant's contentions, Plaintiff has sufficiently alleged that she was

8    competently performing her job. *See* Am. Compl. at 2 ("Throughout her employment

9    with Boeing, [Plaintiff] performed her assigned jobs well"). To be sure, other allegations

10   or documents attached to her complaint contradict this statement by showing that Plaintiff

11   continually violated Defendant's policies, but the Court must accept all factual

12   allegations as true at this juncture. *See Sheppard v. David Evans & Assoc.*, 694 F.3d

13   1045, 1049-50 (9th Cir. 2012) (holding that allegations that plaintiff's "'performance was

14   satisfactory or better' and that 'she consistently received good performance reviews'"

15   were sufficient).

16   Plaintiff's complaint fails, however, because she has not sufficiently alleged a

17   legally cognizable comparator. "Plaintiff must allege sufficient facts that, accepted as

18   true, could demonstrate that a person outside of his protected class but similarly situated

19   in all other material respects was treated more favorably." *Gamble v. Pac. Nw. Reg'l*

20   *Council of Carpenters*, No. 2:14-CV-00455RSM, 2015 WL 402782, at *3 (W.D. Wash.

21   Jan. 29, 2015) (citing *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2008)). Threadbare

22   and conclusory allegations that an employer favors a particular group are insufficient to

23   satisfy the fourth element for disparate treatment. *See id.* (dismissing disparate treatment

---

[2] Perplexingly, Defendant argues that Plaintiff's complaint should be dismissed because her allegations "are unsupported by any declaration, document, or other shred of evidence." Dkt. # 31 at 8. Courts ordinarily may not examine evidence outside the four corners of the complaint in evaluating a motion to dismiss for failure to state a claim. *See Marder*, 450 F.3d at 448. And, as with facial attacks on subject matter jurisdiction, plaintiffs are not required to provide evidence in response to such motions to dismiss. *Cf. Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

ORDER – 5

1   claims for failing to identify similarly situated employees who were treated more

2   favorably); *see also Gamble v. Pac. Nw. Reg'l Council of Carpenters,* No. C14-455 RSM,

3   2015 WL 3442561, at *3 (W.D. Wash. May 28, 2015) (dismissing same claims with

4   prejudice).

5          Plaintiff does not provide any comparator for her disparate treatment claims

6   beyond simply alleging that "male employees not of her race" (Am. Compl. at 3), "others

7   who were not of Plaintiff's race, national origin, age and gender," (Am. Compl. at 4) or

8   "male American employees in same group" (Am. Compl. at 4) were treated more

9   favorably.  Crucially, Plaintiff has not identified any other individuals who "have similar

10  jobs and display[ed] similar conduct."[3]  *Vasquez*, 349 F.3d at 641 (citing *Ward v. Procter*

11  *& Gamble Paper Prods. Co.*, 111 F.3d 558, 560-61 (8th Cir. 1997)).  Plaintiff does not

12  allege that other individuals with a similar disciplinary record as hers were not terminated

13  or disciplined in a similar manner.  *See Espinoza v. Corvington*, No. 2:10-CV-03213

14  JAM, 2012 WL 639313, at *1 (E.D. Cal. Feb. 27, 2012) (holding that plaintiff had not

15  sufficiently alleged that a similarly situated individual received more favorable treatment

16  where there were no allegations that plaintiff and named comparator exhibited similar

17  conduct).

18         The Court **DISMISSES** Plaintiff's claims for disparate treatment as insufficiently

19  pleaded at this time.  Nevertheless, because this is the first time that the Court has

20  reached the merits of Plaintiff's allegations, it will grant her **leave to amend**.  In order to

21  sufficiently plead her claim, Plaintiff must provide sufficient factual allegations of

22  comparators – individuals who have similar jobs and displayed similar conduct.

23

24

25

26  _____

27  [3] Perhaps the closest Plaintiff comes is attaching the affidavit of Ted Yan, who apparently was an engineer who worked with Plaintiff.  *See* Am. Compl. at 30.  However, Mr. Yan's statements do not indicate that he ever engaged in any of the activity Plaintiff claims she was disciplined for.

28  ORDER – 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    b.  Hostile Work Environment Claims

        The Court turns to Plaintiff's hostile work environment claims pursuant to Title

VII and WLAD.  Plaintiff appears to allege that she was subject to a hostile work

environment on account of her race, age, sex, and national origin.  *See* Am. Compl. at 9.

        To prevail on such a claim, Plaintiff must show: (1) that she was subjected to

verbal or physical conduct based on her protected characteristic; (2) that the conduct was

unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the

conditions of the plaintiff's employment and create an abusive work environment.  *See*

*Vasquez*, 349 F.3d at 642; *see also Knight*, 797 F. Supp. 2d at 1131 (analyzing Title VII,

§ 1981, and WLAD hostile work environment claims together).

        Defendant contends that Plaintiff has not sufficiently alleged the first and third

elements.  *See* Dkt. # 31 at 8; Dkt. # 36 at 5.  Again, Plaintiff does not directly address

these issues.  The Court agrees with Defendant and finds that Plaintiff has not sufficiently

alleged a hostile work environment claim.

        First, Plaintiff simply has not alleged any facts demonstrating that she was

subjected to verbal or physical conduct based on her sex, race, or national origin.

Plaintiff alleges several instances of conduct, but none of them reference her race,

national origin, age, or sex.  The only clear instance of verbal conduct, for example, is

when Mr. Weber told Plaintiff during a performance review that he could "easily get a

drafter to replace" her.  *See* Am. Compl. at 3.  Beyond Plaintiff's speculation, there is

nothing tying this language to any of her protected class traits.

        Second, Plaintiff has not alleged sufficient facts to show that the conduct was

severe or pervasive enough to constitute a hostile work environment.  Plaintiff alleges

just a few incidents of conduct prior to her termination – she had an insulting

performance review, she received two phone calls on a sick day, had her laptop seized

and remote working privileges revoked, and was not permitted to flex her time.  *See id.* at

3-4.  Beyond the fact that none of that conduct appears directed at Plaintiff's protected

ORDER – 7

class traits (beyond her speculative say-so), they also fall far short of the level necessary to violate Title VII. *See Vasquez*, 349 F.3d at 642-43; *see also Henry v. Regents of the Univ. of Cal.*, 37 F. Supp. 3d 1067, 1085 (N.D. Cal. 2014) ("In general, the Ninth Circuit has found that such 'isolated' incidents, occurring sporadically over a long period of time, are not severe or pervasive enough to alter the conditions of employment.").

Accordingly, the Court will **DISMISS** Plaintiff's hostile work environment claims. However, because this is the first time the Court has considered the merits of Plaintiff's claim and because Plaintiff could potentially cure the deficiencies through amendment, the Court dismisses these claims **with leave to amend.**

c. Retaliation Claims

Plaintiff also alleges a claim for retaliation. *See* Am. Compl. at 10. As best as the Court can tell, Plaintiff alleges that she was terminated in November 2014 in retaliation for an EEOC complaint she made in October 2014. *See id.* at 2. Plaintiff also alleges retaliation for failing to return Mr. Sellers' calls in August 2014 and for refusing to release engineering drawings in March 2014. *See id.* at 2-3.

Courts commonly consider retaliation claims brought under Title VII and WLAD together. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (citing *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002); *Graves v. Dep't of Game*, 887 P.2d 424, 428 (Wash. Ct. App. 1994)). To make out a prima facie case of retaliation, Plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." *Id.* (quoting *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196-97 (9th Cir. 2003)).

Defendant contends that Plaintiff has not alleged any causal link between the October 2014 discrimination complaint and her November 2014 termination. *See* Dkt. # 31 at 10. "A causal link can be shown by direct evidence or inferred from circumstantial evidence such as the temporal proximity between the protected activity and the

ORDER – 8

1    employment decision and whether the employer knew that the employee engaged in

2    protected activities." *Arthur v. Whitman Cty.*, 24 F. Supp. 3d 1024, 1035 (E.D. Wash.

3    2014) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)); *see also Thomas*

4    *v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (quoting *Villiarimo v. Aloha*

5    *Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)) ("The causal link between a

6    protected activity and the alleged retaliatory action 'can be inferred from timing alone'

7    when there is a close proximity between the two.")).

8         Plaintiff appears to sufficiently allege a causal link between her engagement in

9    protected activity[4] and her subsequent discharge.  Plaintiff filed a discrimination

10   complaint in October 2014 (*see* Am. Compl. at 18) and was discharged a month later

11   (Am. Compl. at 2).  The one month span between Plaintiff's protected activity –

12   submitting the October 2014 EEOC complaint – and the allegedly retaliatory conduct –

13   her termination – is sufficiently close in time to raise the inference of retaliation.  *See*

14   *Trizuto v. Bellevue Police Dep't*, 983 F. Supp. 2d 1277, 1291-92 (W.D. Wash. 2013)

15   (holding that two month span between complaint and alleged retaliatory conduct raised

16   inference of retaliation).

17        Plaintiff does not, however, explain how her other actions – failing to return Mr.

18   Sellers' calls or refusing to release engineering drawings – constitute protected activity

19   under Title VII or WLAD.  "An employee engages in protected activity when she

20   opposes an employment practice that either violates Title VII or that the employee

21   reasonably believes violates that law."  *Westendorf v. W. Coast Contractors of Nev., Inc.*,

22   712 F.3d 417, 422 (9th Cir. 2013) (citing *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir.

23   2006)); *see Alonso*, 315 P.3d at 620 (citing *Short v. Battle Ground Sch. Dist.*, 279 P.3d

24

25

26   _____

   [4] Defendant does not address this point, but Plaintiff has sufficiently alleged that she engaged in
   protected activity by complaining that her supervisor violated Title VII.  *See E.E.O.C. v. Go*

27   *Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009) (citing *Trent v. Valley Elec. Ass'n, Inc.*,
   41 F.3d 524, 526 (9th Cir. 1994)).

28   ORDER – 9

902, 911 (Wash. Ct. App. 2012)).  Plaintiff's refusal to call Mr. Sellers or to release certain drawings does not relate to any activity protected by the relevant statutes.

The Court will **DENY** Defendant's Motion as to Plaintiff's allegations of retaliation relating to the October 2014 discrimination complaint.  However, the Court also **GRANTS** Defendant's Motion as to Plaintiff's claims of retaliation relating to Mr. Sellers' calls and to her refusal to release drawings.  Still, the Court suggests that Plaintiff clarify the scope of her claim in any amended pleading.

       d.  <u>Wrongful Termination in Violation of Public Policy</u>

Plaintiff also brings a claim for wrongful discharge in violation of public policy. *See* Am. Compl. at 10.  Plaintiff appears to allege that Defendant violated public policy in terminating her for refusing to release engineering drawings that she considered inappropriate to release.  *See id.*

In order to state a claim for wrongful termination in violation of public policy, a plaintiff must allege facts showing four elements: "(1) the existence of a clear public policy (the clarity element); (2) that discouraging the conduct in which he or she engaged would jeopardize the public policy (the jeopardy element); (3) that the public-policy-linked conduct caused the dismissal (the causation element); and (4) that the defendant has not offered an overriding justification for the dismissal (the absence of justification element)." *Armijo v. Yakima HMA, LLC*, 868 F. Supp. 2d 1129, 1134 (E.D. Wash. 2012) (quoting *Cudney v. ALSCO, Inc.*, 259 P.3d 244, 246 (Wash. 2011)).  Furthermore, plaintiffs must show that a stated public policy has been contravened, such as "when an employer terminates an employee as a result of his or her (1) refusal to commit an illegal act, (2) performance of a public duty or obligation, (3) exercise of a legal right or privilege, or (4) in retaliation for reporting employer misconduct." *Id.* (citing *Danny v. Laidlaw Transit Servs., Inc.*, 193 P.3d 128, 132 (Wash. 2008)).

Defendant contends that Plaintiff's claim fails because she does not identify any public policy that was violated.  *See* Dkt. # 31 at 12.  Plaintiff does not respond to this

ORDER – 10

argument and the Court could not identify any public policy at issue.  At best, her complaint suggests that her wrongful termination claim rests upon the same ultimate theory as her retaliation or disparate treatment claims.  If so, her interests are likely already protected by these other statutes, rendering her wrongful termination claim superfluous.  *See Armijo*, 868 F. Supp. 2d at 1134-35 (holding that WLAD and Washington's Law Against Retaliatory Discharge could not support another claim for wrongful termination because plaintiff had not shown they were inadequate to protect public policy); *see also Lee v. Rite Aid Corp.*, 917 F. Supp. 2d 1168, 1175-76 (E.D. Wash. 2013) (finding that wrongful discharge claim was barred because Washington's Family Leave Act ("WFLA"), WLAD, and the federal Family and Medical Leave Act ("FMLA") sufficiently protected the public policy against pregnancy related employment discrimination).

Defendant also argues that Plaintiff has not sufficiently alleged a causal link between her alleged public policy linked conduct and the discharge.  *See* Dkt. # 31 at 12. The Court agrees.  As best as the Court could tell, Plaintiff refused to release engineering drawings in March 2014 but was terminated in November 2014, more than eight months later.  *See* Am. Compl. at 2.  That length of time does not appear to give rise to any inference of causation, at least in the retaliation context.  *See Hedenburg*, 476 F. Supp. 2d at 1209 (holding that plaintiff's wrongful discharge and retaliation claims failed because she could not show a causal link where protected activity occurred more than seven months before the adverse employment action).

The Court will **DISMISS** this claim.  Given Plaintiff's failure to directly address this (or any other claim) in her opposition, the Court is skeptical of whether this claim could be cured through further amendment.  Nevertheless, because this is the first time the Court has considered the merits of Plaintiff's claims, the Court will grant Plaintiff **leave to amend** this claim.

ORDER – 11

1       e.  <u>Family Medical Leave Claims</u>

2          Plaintiff also contends that Defendant violated the FMLA and the WFLA.  *See*

3   Am. Compl. at 10.  Plaintiff appears to contend that Defendant refused to grant Plaintiff

4   leave to care for her father.  *See id.*  Plaintiff's allegations show that she actually received

5   approval to "flex" her work schedule in order to care for her father.  *See id.* at 4 ("On

6   10/14/14 plaintiff Nguyen asked her supervisor Gary Weber, to allow her to flex her

7   work schedule to a '9/80' schedule with Wednesday 10/22/14 off only once, to help her

8   old and ill dad. She got approval.").

9          Given that Defendant approved Plaintiff's request, it is unclear how Plaintiff could

10   have stated a claim for interference with her FMLA or WFLA benefits.  *See McDaniels v.*

11   *Grp. Health Co-op*, 57 F. Supp. 3d 1300, 1316 (W.D. Wash. 2014) (quoting *Sanders v.*

12   *City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)) (outlining elements for FMLA

13   interference claim, including that employer must have denied plaintiff FMLA benefits to

14   which plaintiff as entitled); *see also Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d

15   1264, 1269 (W.D. Wash. 2013) (quoting *Washburn v. Gymboree Retail Stores, Inc.,* No.

16   C11-822RSL, 2012 WL 5360978, at *7 (W.D. Wash. Oct. 30, 2012)) (holding that

17   WFLA mirrors FMLA and instructs to construe its provisions in a manner consistent with

18   similar provisions in the FMLA).

19          As such, the Court **DISMISSES** Plaintiff's FMLA and WFLA claims.  Because

20   this is the first time the Court has considered the merits of Plaintiff's claims, the Court

21   will grant Plaintiff **leave to amend** this claim.  However, the Court cautions Plaintiff that

22   unless she can identify an instance where Defendant actually denied her benefits to which

23   she was entitled under the FMLA or WFLA, her claims under these statutes will fail.

24       f.  <u>Failure to Accommodate Claim</u>

25          Plaintiff further alleges a claim for failure to accommodate under the Americans

26   with Disabilities Act ("ADA") and the WLAD.  *See* Am. Compl. at 11.  She contends

27   that Defendant violated these acts because she was not able to receive a "CAD" scan after

28   ORDER – 12

she had been terminated and for disciplining her for improperly using sick leave the week after her eyeglasses were stolen.  *See id.*  She further alleges that she is disabled due to her impaired vision.  *See id.*

In order to state a claim for failure to accommodate under the ADA, Plaintiff "must show that '(1) [he] is disabled within the meaning of the ADA; (2) [he] is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [he] suffered an adverse employment action because of [his] disability.'"  *Hotchkiss v. CSK Auto, Inc.*, 918 F. Supp. 2d 1108, 1123 (E.D. Wash. 2013) (quoting *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012)).  The showing under the WLAD is similar and requires plaintiffs to show "(1) that he had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) that he was qualified to perform the essential functions of the job in question; (3) that he gave his employer notice of the abnormality and its accompanying substantial limitations; and (4) upon receiving notice, the employer failed to affirmatively adopt measures that were available to and medically necessary to accommodate the abnormality."  *Id.* (citing *Riehl v. Foodmaker, Inc.*, 94 P.3d 930, 934 (Wash. 2004)).

Plaintiff has not adequately alleged any of the necessary elements.  First, Plaintiff does not appear to have sufficiently alleged a disability within the meaning of the ADA as "ordinary eyeglasses or contact lenses . . . must be considered in determining whether an impairment substantially limits a major life activity."  *Rohr v. Salt River Project Agriculture Improvement & Power Dist.*, 555 F.3d 850, 862 n.9 (9th Cir. 2009).  In other words, her eyeglasses must be considered in determining whether Plaintiff even has an impairment for purposes of the ADA.  Second, it is not entirely clear how Defendant could have accommodated any disability a month after Plaintiff was terminated.  *See* Am. Compl. at 2, 11 (Plaintiff's employment was terminated in November 2014 but she sought a "CAD" scan in December 2014).  Finally, Plaintiff does not allege that she

ORDER – 13

1    actually requested an accommodation for her impairment – instead, Plaintiff appears to

2    have requested time off because she "can't work around thefts." *See id.* at 14.

3        The Court expresses some skepticism as to whether Plaintiff can cure the

4    substantial deficiencies with this claim, but given Plaintiff's *pro se* status and the fact that

5    the Court has not previously considered the merits of her claim, the Court will **DISMISS**

6    Plaintiff's failure to accommodate claims **with leave to amend**.

7        g.   Plaintiff's Request for Expedited Discovery

8        Finally, the Court considers a group of requests Plaintiff filed as a "Motion to

9    Grant Plaintiff Relief and Expedite Subpoenas per civil Rule 8(b)1B." Dkt. # 37.  The

10   vast majority of this pleading simply repeats the same factual allegations that Plaintiff has

11   continuously presented to the Court.  *See id.* at 1-10.  The remainder is a one paragraph

12   request for expedited trial subpoenas or an expedited trial date.  *See id.* at 11.  Plaintiff's

13   reply is functionally identical.  *See* Dkt. # 40.

14       The portions of Plaintiff's pleadings which simply repeat her factual allegations *ad*

15   *nauseum* or address the contents of Defendant's Motion to Dismiss constitute an

16   improper surreplies, particularly as Plaintiff has not followed the procedures outlined in

17   the Court's Local Rules.  *See* Local Rules W.D. Wash. LCR 7(g).  Surreplies are

18   permitted solely to strike material contained or attached in a reply brief and only if

19   certain timing and formatting requirements are met.  *See id.*  And Plaintiff did not comply

20   with any of these rules.

21       The portions of Plaintiff's pleadings which request an expedited trial or discovery

22   schedule are **DENIED** because Plaintiff has not shown good cause.  To the extent that

23   Plaintiff is seeking discovery, discovery is not permitted as the Parties have yet to confer

24   as required by Federal Rule of Civil Procedure 26(f).  *See* Fed. R. Civ. P. 26(d)(1).

25   Plaintiff has not shown good cause to permit early discovery.  *See Semitool, Inc. v. Tokyo*

26   *Elec. Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) (applying "good cause" standard to

27   requests for early discovery).  Even beyond that, discovery in this matter is premature

28   ORDER – 14

given the substantial deficiencies in Plaintiff's Amended Complaint.  Trial in this matter is even more premature, given that this case has not proceeded past the pleadings stage and the Parties have yet to exchange discovery.

## V.  CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss.  Dkt. # 31.  Because it is possible that Plaintiff could cure certain deficiencies in her complaint through amendment, the Court will **DISMISS** her Amended Complaint **with leave to amend.**  Plaintiff must file an amended complaint addressing the deficiencies the Court has outlined **within twenty-one (21) days of this Order**.  The Court cautions Plaintiff that if she fails to cure the deficiencies in many of her causes of action as outlined above, they will be dismissed.

Additionally, the Court **DENIES** Plaintiff's "Motion to Grant Relief".  Dkt. # 37. Although Plaintiff is proceeding *pro se*, she is "not excused from following court rules." *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997).  The Court advises Plaintiff that as a pro se litigant, she is responsible for pursuing her claims, including meeting court deadlines and complying with the Court's local rules.  She will find resources for pro se parties, including the Court's local rules, at the Court's website, at www.wawd.uscourts.gov.

DATED this 16th day of May, 2016.

The Honorable Richard A. Jones
United States District Judge

ORDER – 15