UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MINHNGA NGUYEN,<br><br>    Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY,<br><br>    Defendant. | Case No. C15-00793-RAJ<br><br>**ORDER** |

This matter comes before the Court on Defendant's Motion for Summary Judgment. Dkt. # 100. Plaintiff opposes the Motion. Dkt. # 102. For the reasons that follow, the Court **DENIES** Defendant's Motion. Dkt. # 100.

**I.  BACKGROUND**

Plaintiff Minhnga Nguyen is a Vietnamese woman and a resident of the State of Washington. Dkt. # 104 ¶¶ 1, 3. Plaintiff was hired by Defendant, the Boeing Company ("Boeing), in 1991. *Id*. at ¶ 3. Nguyen worked at Boeing as an Electrical Engineer until she was laid off from her job in 2009. *Id*. at ¶¶ 3-5. From April 26, 2010 through December of 2011, Nguyen worked for Boeing as a Contract Engineer. *Id*. at ¶ 6. In 2011, Boeing hired Nguyen back as a Level 3 System Engineer. *Id*. at ¶ 7.

ORDER - 1

Pursuant to Boeing's Administration of Employee Corrective Action Policy, an Employee Corrective Action ("ECA") will be taken when an employee engages in a practice that is inconsistent with the Boeing Code of Conduct, Expected Behaviors for Boeing Employees, U.S. Government security, regulatory and contractual requirements, or ordinary, reasonable, common sense rules of conduct. Dkt. # 101-1 at 68-76. When an employee has an active corrective action on file, it is typically handled using progressive corrective action. *Id*. The corrective action process does not necessarily include every step, and can begin with any level and proceed to more severe measures for similar subsequent violations. *Id*. After an investigation and review, an ECA is issued at one of the following escalating levels: (1) verbal warning; (2) written warning; (3) time off from work; and (4) discharge. *Id*. Written warnings, time off from work, and discharge require preparation and issuance of a Corrective Action Memo ("CAM"). *Id*. After the ECA is issued, employee behavior is routinely monitored for compliance. *Id*. If a CAM is in active status, it must be the basis for progressive corrective action if the employee engages in behavior that is the same or similar to the behavior in the active CAM. *Id*. The standard duration of an active CAM is twelve (12) months unless additional violations for the same or similar type of offense have occurred. *Id*. If such an additional violation occurs, the previous active CAM's expiration date will be extended to match that of the subsequent CAM. *Id*.

On March 14, 2014, Plaintiff received a CAM from her supervisor at the time, Dorothy Todd, for failure to comply with management direction. Dkt. # 103 Ex. A. Prior to that date, Plaintiff alleges that she complained about Todd not treating her equally to other employees. Dkt. # 104 ¶ 9. Plaintiff responded to this CAM and stated that her supervisor, Dorothy Todd, and James Michael Todd were retaliating against her for reporting James Michael Todd's actions. Dkt. # 103 Ex. A. It is

unclear what these actions were, or why Todd and James Michael Todd would be retaliating against Plaintiff for reporting them. *Id*.

In April of 2014, Todd was transferred to a different group and Gary Weber became Plaintiff's supervisor. Dkt. # 104 ¶ 12. Keith Sellers became Plaintiff's senior manager, and Kim Conner became her Human Resources generalist. *Id*. at ¶ 13. In August of 2014, Plaintiff received a second CAM for failing to comply with management direction. The CAM states that Plaintiff failed to notify management that she was out of the office on July 21, 2014 and that she failed to report her time accurately. Dkt. # 103 Ex. B.

Plaintiff's manager, Weber, was on vacation at that time, and Plaintiff alleges that she sent her acting manager, Jeff Vick, an email on July 18, 2014, informing him that she was ill and that she would be absent the following Monday. Dkt. # 104 ¶ 16. On July 21, 2014, Sellers called Plaintiff's home twice, but Plaintiff did not answer his calls. *Id*. Sellers directed Plaintiff to change her time entry for July 21, 2014 to time off without pay, but Plaintiff did not do so. Dkt. # 101-1. The parties disagree on whether Vick or Sellers was Plaintiff's acting manager while Weber was on vacation. Dkt. ## 100, 104. Plaintiff received time off from work without pay for this CAM. Dkt. # 103 Ex. B. The Expected Behavior Category Violation ("EBCV") for both the March 2014 and August 2014 CAMs was "Produce, design, and support our products and services". Dkt. # 103 Exs. A, B. On August 15, 2014, Plaintiff contacted Director of Engineering, Rich Horigan, complained about her suspension, and asked him for assistance. Dkt. # 104 ¶ 21.

On September 9, 2014, Plaintiff received a parking ticket and her car was towed. Dkt. # 101-1. On October 14, 2014, Plaintiff received a third CAM for failing to comply with site parking regulations. The EBCV for this CAM was "Adhere to company agreements, policies, and procedures". Dkt. # 101-1 at 81. On October 17,

ORDER - 3

2014, Plaintiff filed a discrimination complaint with Boeing's EEO department. Dkt. # 104 ¶ 24. Plaintiff requested Human Resources Manager Heather Frasier's help filing the complaint. *Id*; Dkt. # 101 Ex. 3. On that same day, Weber emailed Kim Conner asking to meet to "talk over an employee issue and how to move forward." Dkt. # 103 Ex. D.

On October 20, 2014, Conner sent herself two emails detailing her meeting with Weber. *Id*. The emails state that Weber's concern "is regarding Mihngna Nguyen [sic] and her continuing to fail to follow directions." The emails also state that Plaintiff "continues to do some work that takes a significant amount of time away from the expected work packages," that Plaintiff would not use a common spreadsheet to log information despite being asked to do so, that there were "other issues", and that Weber had given her "sufficient time and repeated requests to comply with the direction, but she fails to do as requested." *Id*. The emails also note that Conner informed Frasier, since Frasier received emails from Plaintiff on "01/16/2014 [sic] and 01/17/2014 [sic] . . . regarding the corrective action she has received and feeling singled out," and that Weber stated that Plaintiff was not being singled out. *Id*.

On or about October 27, 2014, Conner met with Plaintiff to discuss the issues raised by Weber. Dkt. # 101 Ex. 3. Conner followed up with Plaintiff in writing, asking for her view of the situation. Dkt. # 101-1 at 79-80. The email detailed four examples of situations where Weber asked Plaintiff to do something, and Plaintiff did not follow his directions. *Id*. Plaintiff responded to Conner's email and Conner then reviewed Plaintiff's response with Weber. Dkt. # 101 Ex. 3. In Plaintiff's response, she indicated that felt she was being treated differently than other employees in the same group, and that she was concerned that Conner and Weber were working together to give her CAMs and suspensions, and that she was being targeted for termination. Dkt. # 101-1 at 79-80. After reviewing Plaintiff's responses, Weber

ORDER - 4

made the decision to discharge Plaintiff. Conner testified that decision to terminate Plaintiff was made on or around October 28 or 29, 2014. *Id*.

On November 4, 2014, Frasier submitted Plaintiff's complaint to David Wuerch in Boeing's EEO department. Dkt. # 101 Ex. 4. Wuerch and Frasier exchanged emails regarding the content of the complaint and Frasier indicated that she met with Plaintiff in order to "try to understand the basis of her complaint," and noted that Plaintiff incorporated some additional information. Dkt. # 101 Ex. 3. On November 13, 2014, Wuerch wrote to Frasier that he did not see any "EEO issues" and that they could proceed with Plaintiff's termination. *Id*.

On November 20, 2014, Sellers informed Plaintiff that she was being issued two additional CAMs. Dkt. # 101 Ex. 5; Dkt. # 104. The first was issued because Plaintiff received another parking violation. The EBCV for this CAM was "Adhere to company agreements, policies and procedures. Dkt. # 101-1 at 82. The second was issued for failure to comply with management direction. Specifically, for Plaintiff's failure to obtain manager approval to flex her schedule, failure to stop doing a specific process and derivative work statement when requested by her manager, and failure to start using a common process when requested by her manager. Dkt. # 101-1 at 83. The EBCV for this CAM was "Produce, design, and support our products and services." This was Plaintiff's third CAM issued for this EBCV. *Id*. Sellers then informed Plaintiff that he was terminating her employment with Boeing for failure to follow employer directives. Dkt. # 104.

Plaintiff filed a Complaint against Boeing on May 20, 2015. Plaintiff alleged harassment and discrimination based on her race, national origin, and sex, and termination in retaliation for complaining about the alleged harassment and discrimination. Dkt. # 1. Plaintiff has since amended her complaint three times in response to three motions to dismiss. Dkt. ## 25, 29, 43. On December 20, 2016, the

ORDER - 5

Court granted Defendant's motion to dismiss with respect to all claims except for her retaliation claim. Dkt. # 46.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp*., 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v.*

*Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

### III. DISCUSSION

The Court analyzes Plaintiff's state and federal retaliation claims under the same framework. *Stegall v. Citadel Broad. Co*., 350 F.3d 1061, 1065-1066 (9th Cir. 2003) (finding that Washington courts look to federal law when analyzing retaliation claims, and utilizing the three-part burden shifting test described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in a statutorily protected activity, (2) defendant took some adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse employment action. *Id.* at 1065-1066; *Corville v. Cobarc Servs., Inc.*, 869 P.2d 1103, 1105 (Wash. Ct. App. 1994). If a plaintiff establishes a prima facie case, the evidentiary burden shifts to the employer to produce admissible evidence of a legitimate, nondiscriminatory reason for the discharge. *Stegall*, 350 F.3d at 1066; *Hollenback v. Shriners Hospitals for Children*, 206 P.3d 337, 344 (Wash. Ct. App. 2009). If the employer meets its burden, the presumption is removed and the employee must then establish a genuine issue of material fact as to pretext. *Stegall*, 350 F.3d at 1066; *Hollenback*, 206 P.3d at 344.

A. <u>Prima Facie Case</u>

The parties do not dispute whether Plaintiff engaged in a statutorily protected activity when she filed her EEO complaint in October of 2014 and that her termination in November of 2014 was an adverse employment action. Boeing argues that Plaintiff

cannot establish a prima facie case of retaliation because she cannot establish a causal connection between her protected activity and the adverse employment action. Plaintiff argues that Weber's knowledge of the complaint, and the proximity in time between Plaintiff's complaint and her termination, are sufficient circumstantial evidence to establish the causal link between her protected activity and the alleged retaliatory action. Dkt. # 102. To establish causation, Plaintiff must show by a preponderance of the evidence that filing the complaint was one of the reasons she was terminated and that but for the complaint, she would not have been fired. *See Villiarimo*, 281 F.3d at 1064–65. "[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Id.*

First, it is unclear when exactly the decision to terminate Plaintiff was made. Conner testified that the decision to terminate Plaintiff was made on October 28 or 29, 2014. Dkt. # 101 Ex. 3. Weber testified that the decision to terminate Plaintiff was made before he left on vacation. Dkt. # 101 Ex. 2. He notified Conner that he intended to terminate Plaintiff and that Conner told him that they needed to wait until Plaintiff's EEO complaint was investigated. Weber estimated that this conversation took place somewhere between November 10th and 17th. *Id.* Weber also stated that the actual decision to terminate was made prior to his conversation with Conner about when the termination should actually occur. Dkt. # 107 Ex. 2. Weber, the person who made the decision to terminate Plaintiff, did not give an exact date or time frame as to when this decision was made. *Id.*

Second, there is an issue of fact as to when the appropriate decisionmaker had knowledge of Plaintiff's complaint. Boeing contends that the decision to terminate Plaintiff was made before Conner and Weber learned that she had filed an EEO complaint. After Weber made the decision to terminate Plaintiff's employment,

ORDER - 8

Conner alleges that she spoke to her manager, Frasier, about the termination and it was only then that she and Weber learned of the complaint. Dkt. # 101 Exs. 2, 3. Plaintiff points to the October 20, 2014 emails Conner sent to herself as evidence that Weber and Conner knew about Plaintiff's complaint prior to the decision to terminate. While these emails do not provide definitive proof that Conner knew Plaintiff filed an EEO complaint, they do indicate that Conner and Frasier were in communication regarding Weber's conversation with Conner about his issues with Plaintiff, and that Conner knew that Frasier had received emails from Plaintiff regarding her CAM and her concerns that she was being treated differently from other employees.

Plaintiff first sent her complaint by email to Frasier on October 16, 2014. Dkt. # 101 Ex. 3. Frasier responded and indicated that the complaint form was incomplete. On October 17, 2014, Plaintiff emailed an updated form to Frasier in response to her feedback. *Id.* Conner's October 20, 2014 emails indicate that Conner was aware that Frasier received emails from Plaintiff on "01/16/2014 [sic] and 01/17/2014 [sic] . . . regarding the corrective action she has received and feeling singled out," and that Weber stated that Plaintiff was not being singled out. Dkt. # 103 Ex. D. While Plaintiff provides no other evidence that Weber's decision to terminate her employment was motivated by her EEO complaint, it is not clear from the evidence on the record that Plaintiff would have been terminated regardless of her protected activity. Plaintiff received her final two CAMs on the day she was terminated and after the decision to terminate her was made. It is unclear which of these two CAMs provided the impetus for her termination. Weber and Conner indicate that the decision to terminate Plaintiff occurred prior to the issuance of her last two CAMs. However, Frasier's correspondence with Wurech on November 10, 2014 notes that Plaintiff had "received another parking ticket, which in the progressive part of our corrective action process should result in termination. HRG Kim Conner has been working with our

ORDER - 9

Employee Relation group to determine appropriate go forward timing." Dkt. # 101 Ex. 3.

"Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). Here, where Plaintiff's termination occurred about one month after she filed her complaint, and where there is an issue of fact as to whether Weber had knowledge of that complaint, the closeness of time between the two events is sufficient to support a possible inference of causation.

B. <u>Legitimate, Nondiscriminatory Reason</u>

The Court finds that Boeing has met its burden to produce admissible evidence of a legitimate, nondiscriminatory reason for Plaintiff's discharge. At the time of her termination, Plaintiff had five CAMs: three CAMs under the EBCV "Produce, design, and support our products and services," and two CAMs under the EBCV "Adhere to company agreements, policies and procedures. In all five of these situations, Plaintiff displayed a failure to comply with management direction or company policy. Other than the circumstances leading to her second CAM due to her absence from work, Plaintiff does not dispute the facts underlying her CAMs or that she failed to comply with management directives or company policy. Plaintiff only argues that Boeing policy was implemented differently as applied to her in particular.

At least three of Plaintiff's CAMs were in the same EBCV which is grounds for progressive corrective action. As noted in Boeing's Employee Corrective Action Policy, the corrective action process does not necessarily include every step, and can begin with any level. Boeing was not required to issue Plaintiff a verbal warning prior to her written warnings, and was not, as argued by Plaintiff, required to wait for

Plaintiff to commit four infractions in the same category prior to discharge. Dkt. # 101-1 at 68-76. As Boeing has met its burden to establish a legitimate, nondiscriminatory reason for Plaintiff's discharge, the Court will now consider whether there is a genuine issue of material fact as to pretext.

C. Pretext

At issue is whether, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has raised a genuine issue of material fact as to whether Boeing's legitimate nondiscriminatory reason for Plaintiff's termination is pretextual. "[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998)). In some cases, a combination of indirect and direct evidence can establish pretext so as to make summary judgment improper. *Id*.

As noted above, there is an issue of fact as to the circumstances surrounding Plaintiff's termination, both as to when the decision to terminate her occurred and the exact reasoning behind that decision. There is also an issue of fact as to whether the people making the decision to terminate her had knowledge of her protected activity when the decision was made. Plaintiff also argues that the closeness in time between her EEO complaint and her termination is evidence of pretext. Plaintiff worked for Boeing for twenty-one years, yet her presumably her disciplinary issues did not begin until 2014. According to the evidence presented by the parties, Plaintiff was terminated only eight months after her first CAM and just one month after she engaged in protected activity. This temporal proximity as proof of a causal link between

Plaintiff's complaint and her termination, is relevant to an evaluation of pretext. *See Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 694 (9th Cir. 2017).

In some cases, "the fact that persons outside the plaintiff's protected class were treated better for offenses of comparable seriousness could also help demonstrate pretext." *Id.* Defendant provides no evidence to rebut Plaintiff's allegations that she was being treated differently than other employees with regards to several of the infractions that led to the issuance of her CAMs, namely, with regards to enforcement of parking violations, the handling of her absence on July 21, 2014, and whether she was allowed to flex her schedule. The temporal proximity between Plaintiff's protected activity and her termination, the question of whether Plaintiff's supervisors had knowledge of her complaint when they made the decision to terminate her, the issues of fact regarding the circumstances under which the decision was made, and Plaintiff's allegations that she was being treated differently than other employees in her group, are sufficient to establish a genuine issue of material fact as to whether Boeing's proffered reason for terminating Plaintiff's employment was pretextual. Therefore, summary judgment of Plaintiff's retaliation claim would be inappropriate and Defendant's Motion for Summary Judgment is **DENIED.** Dkt. # 100.

### IV. CONCLUSION

For all the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment. Dkt. # 100.

Dated this 30th day of March, 2018.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge